IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **NEIS ACQUISITIONS AUXGA, LLC,**<br><br>*Plaintiff*,<br><br>v.<br><br>**TARGET CORPORATION**, *et al.*,<br><br>*Defendants.* | **CIVIL ACTION NO.**<br>**5:25-cv-00114-TES** |

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Before the Court is Defendant Target Corporation's ("Target") Motion for Partial Summary Judgment. [Doc. 19]. This Court previously ruled on cross motions for partial summary judgment from both Target and Plaintiff NEIS Acquisitions AUXGA, LLC ("NEIS") that Section 4.2(F) of the parties' Operation and Easement Agreement ("OEA") "obligates Target to repair or restore any part of the Common Area *on its Tract*, including stormwater pipes, damaged or destroyed by any cause other than normal wear and tear." *NEIS Acquisitions AUXGA, LLC v. Target Corp., et al.*, *("Target I")* No. 5:24-cv-126-TES (M.D. Ga. March 27, 2025) (emphasis added), Dkt. No. 70. In its current motion, Target asks the Court to find, as a matter of law, that "Target is not responsible for maintaining, repairing, or restoring any damaged or destroyed Common Area, including Common Utility Lines, *outside of the Target Tract*." [Doc. 19, p. 1 (emphasis

added)]. As explained below, the Court **GRANTS** Target's Motion for Partial Summary Judgment. [Doc. 19].

A.  **Factual and Procedural Background**

Before getting into the background, the Court notes that NEIS did not file a separate and concise statement of material facts that it contends to be in dispute.[1] LR56, MDGa. So, the Court deems all of Target's alleged *facts*[2] as true. *See* LR56, MDGa; *see also* [Doc. 19-2].

Those facts are, briefly: Target and non-party Faison-Sofran Partnership No. II entered into an OEA on June 20, 2000, which governs the operation, common use, maintenance, and repair of Eisenhower Crossing ("Shopping Center"). [Doc. 19-2, ¶¶ 1, 7]. NEIS is Faison-Sofran's successor in interest, and has been the "Operator" of the Shopping Center under the OEA since January 2022. [*Id.*, ¶ 3]. Therefore, the OEA governs the relationship between Target and NEIS. [*Id.*, ¶ 7]. In 2023, the hillside to the

---

[1] Local Rule 56 requires a respondent to attach a "separate and concise statement of material facts . . . to which respondent contends there exists a genuine dispute to be tried." LR56, MDGa. Failure to do so means that "[a]ll material facts contained in the movant's statement which are not specifically controverted by *specific citation to particular parts* of . . . the record shall be deemed to have been admitted, unless otherwise appropriate." *Id.* (emphasis added); *see also Mathews v. Wal-Mart, Inc.*, No. 5:22-cv-00397-TES, 2024 WL 3905815, at *2 (M.D. Ga. Aug. 22, 2024). To be sure, the Court isn't saying that NEIS didn't comply with the rule – it has hired very good counsel who just don't ignore local rules. Rather, the Court assumes that NEIS simply agreed with the facts as presented by Target in this motion so that there was nothing to dispute.

[2] Importantly, this Court finds that Paragraph 29 of Target's Statement of Undisputed Facts is not only a legal conclusion but also is unsupported by specific citation to particular parts of the record. Therefore, the Court neither accepts it as a fact nor considers it in its analysis. *See* LR56 M.D.Ga ("Material facts not supported by specific citation to particular parts of materials in the record and statements in the form of issues or legal conclusions (rather than material facts) will not be considered by the court.").

west of the Target store collapsed. [*Id.*, ¶¶ 19–20]. The present dispute emerged from that collapse.

NEIS filed a declaratory judgment action on March 30, 2024, in the Superior Court of Bibb County, Georgia, seeking, essentially, a declaration about who is responsible under the OEA to pay for the collapse of the hillside (the "sinkhole claim"). *Target I*, No. 5:24-cv-126-TES (M.D. Ga. Apr. 25, 2024), Dkt. No. 1-1. Target removed the sinkhole claim to this Court on April 25, 2024. *Target I*, No. 5:24-cv-126-TES (M.D. Ga. Apr. 25, 2024), Dkt. No. 1. Both Target and NEIS filed Motions for Partial Summary Judgment on October 7, 2024, and November 19, 2024, respectively. *Target I*, No. 5:24-cv-126-TES (M.D. Ga. Oct. 7, 2024), Dkt. Nos. 34, 54. The Court ruled that the OEA "clearly and unambiguously obligates Target to repair . . . or restore any part of the Common Area on its Tract, including stormwater pipes, damaged or destroyed by any cause other than normal wear and tear." *Target I*, No. 5:24-cv-126-TES (M.D. Ga. Mar. 27, 2025), Dkt. No. 70.

On December 12, 2024, NEIS filed a Complaint for Specific Performance in the Superior Court of Gwinnett County, Georgia, seeking to make Target repair the lighting system on Target's Tract (the "lighting claim"). [Doc. 1, ¶ 1]. Target removed the lighting claim to the United States District Court for the Northern District of Georgia and the Northern District of Georgia transferred it to this Court on March 20, 2025. [Doc. 1, p. 6]; [Doc. 4]. Target filed a motion to consolidate the sinkhole claim and

lighting claim, which this Court granted. [Doc. 6]; [Doc. 7]. NEIS subsequently amended its complaint—combining the two cases into one—to ask for specific performance requiring Target to both repair and restore the rear common area on the Target tract and fix the lighting system. [Doc. 10, p. 3].

Target then filed the current Motion for Partial Summary Judgment on July 27, 2025, seeking "to find that as a matter of law, Target is not responsible for maintaining, repairing, or restoring any damaged or destroyed Common Area, including Common Utility Lines, outside of the Target Tract." [Doc. 19, p. 1]. NEIS filed a Response, disputing the relevancy of Target's motion to the current proceedings, and Target's interpretation of the OEA. [Doc. 27, p. 3–4]. The Court held a hearing on September 29, 2025, regarding these disputes. [Doc. 34].

B.   **The Disputed OEA Provisions**

In arguing this Motion, the parties point to Sections 4.2(D), 4.2(F), and 4.2(G) of the OEA. [Doc. 19-1, p. 3–4]; [Doc. 27, p. 3–4]. Those provisions read:

> 4.2 Common Area.
> . . .
> (D) Through and including December 31, 2003 (except for adjustments due to portions of the Additional Property being made subject to this OEA as hereinafter provided in this Section 4.2(D)), Common Area Maintenance Costs and the Administration Fee shall be allocated after deducting any contributions thereto from the Outlots (as hereinafter provided) or any non-Parties, if any, as follows:
> 
>     (i)    To the Developer Tract    -75.90%
>     (ii)    To the Target Tract    -24.10%
>     (iii)    To each Outlot    -as provided in Section 4.2(H) of this OEA

4

As of January 1, 2003 (subject to adjustments due to portions of the Additional Property being made subject to this OEA as hereinafter provided in this Section 4.2(D)), there shall be a one-time adjustment of the relative Common Area Maintenance Costs. The Developer Tract's share shall be the percentage of the Floor Area on the Developer Tract relative to the Floor Area in the Shopping Center. The Target Tract's share shall be the percentage of the Floor Area on the Target Tract relative to the Floor Area in the Shopping Center.

. . .

(F) If any portion of the Common Area is damaged or destroyed by any cause whatsoever, whether insured or uninsured, during the term of this OEA, other than damage caused by ordinary use or wear and tear, the Party upon whose Tract such Common Area is located shall repair or restore such Common Area at its sole cost and expense with all due diligence; provided, however, that no Party shall be required to expend more than $250,000 in Constant Dollars in excess of insurance proceeds which may be available or which would have been available except for such Party's election of deductibles or self-insurance, which amount such the Party shall be responsible to contribute) for such repair or restoration. Notwithstanding the limitation set forth in the preceding sentence, a Party may require another Party to do such restoration work if the requiring party has agreed in writing to pay the costs in excess of $250,000.00. Except to the extent limited by Section 5.4(0), if such damage or destruction of Common Area on its Tract is caused in whole or in part by another Party or a third Person, the Party obligated to make such repair or restoration reserves and retains the right to proceed against such other Party or third Person for indemnity, contribution and /or damages.

(G) Target shall have the right, upon giving not less than sixty (60) days' written notice to Operator, to take-over and assume the maintenance of the Common Area upon the Target Tract. Following the effective date of such take-over and assumption, Target shall maintain the Common Area on its Tract, and shall pay all costs and expenses incurred in connection therewith; provided, however, Operator shall continue to (i) maintain the Common Utility Lines of the Shopping Center, including any detention/retention ponds, regardless of location, (ii) maintain the Common Area supervisory program, if any, (iii) insure the Common Area on the Target Tract under the Operator's Common Area public liability insurance program if Target elects to participate therein by written notice to Operator, and (iv) maintain any Sign upon which a Target panel is attached. Upon such take-over and

assumption, Target shall be released from the obligation to contribute towards Common Area Maintenance costs for the balance of the Common Area, except with respect to those functions identified above for which continued participation is mandatory or elected. Target's share of such costs shall be paid in accordance with the allocation set forth in Section 4.2(D) or, with respect to Signs, Section 5.3(A). Operator shall continue to maintain the balance of the Common Area in accordance with the standards set forth herein.

[Doc. 1-2, pp. 42–44]; [Doc. 1-3, p. 1].

### C. **Legal Standard**

With that in mind, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The interpretation of the written contract between parties is properly subject to disposition by summary judgment." *Associated Mech. Contractors, Inc. v. Martin K. Eby Const. Co.*, 964 F. Supp. 1576, 1579 (M.D. Ga. 1997) (internal citation omitted). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion. *Four Parcels*, 941 F.2d at 1437 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Importantly, "[w]hen the nonmoving party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material negating the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 323). Rather, "the moving party simply may show—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Four Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 324) (cleaned up).

If the moving party satisfies this initial burden, the burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The nonmoving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or[] is not significantly probative' of a disputed fact." *Josendis*, 662 F.3d at 1315 (quoting *Anderson*, 477 U.S. at 249–50). "A mere scintilla of evidence supporting the [nonmoving] party's position will not suffice." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

Finally, "all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Anderson*, 477 U.S. at 255. And "if a reasonable jury could make more than one inference from the facts, and one of those permissible inferences creates a genuine issue

of material fact, a court cannot grant summary judgment." *Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020).

D.   **This Motion is Properly Before the Court**

Before getting to the substance of the OEA, the Court first addresses NEIS's argument that Target's motion is "without merit [because] it does not present the Court with an appropriate subject for summary judgment." [Doc. 19, p. 3]. "Federal Rule of Civil Procedure 56(a) permits a party to move for summary judgment on 'part of' a claim." *Cooper v. Parker Promotions, Inc.*, No. 4:17-cv-116, 2019 WL 639016, at *4 n.4 (M.D. Ga. Feb. 14, 2019). NEIS argues the motion here is not appropriate because "[n]either NEIS nor [Target] has sought a declaration as to Target's responsibilities under the [OEA]," so the subject of the motion is not a claim or part of a claim. [Doc. 27, pp. 1–2]. The Court disagrees. From its initial complaint and continuing through the Second Amended Complaint, NEIS has sought, in one form or another, for "the Court to declare *which party*—Target or NEIS—*is responsible* under the terms of the OEA for restoration of the Rear Common Area[3] and the Common Utility Lines, including the

---

[3] The Court notes, for purposes of clarity, that the term "Rear Common Area" is not within the OEA, but rather is NEIS's own term. *Compare* [Doc. 10, p. 13]; *Target I*, No. 5:24-cv-126-TES (M.D. Ga. May 28, 2025) (emphasis added), Dkt. No. 70.

8

Slope and the Retaining Wall." [Doc. 10, p. 15 (emphasis added)].[4] Determining Target's responsibilities beyond its own Tract is "part of" a declaration as to "which party . . . is responsible" for restoration of the sinkhole damage. This is especially true since the tract location and origin of the damage appears—from both the parties' briefs and from their arguments in the hearing—to be a disputed fact. *Compare e.g.* [Doc. 10, p. 12]; [Doc. 10-2, p. 1]; [Doc. 21-8, p. 3].

Furthermore, even if the present motion does not fall under NEIS's declaratory judgment claim, Target's obligations under the OEA also relate directly to its Second Amended Counterclaims—for example, its breach of contract claim. [Doc. 12, p. 2]. A breach of contract claim, under Georgia law, requires a (1) breach, (2) damages resulting from the breach, and that the damages are "to the party who has the right to complain about the contract being broken." *Thomas v. U.S. Bank Nat'l Ass'n*, 675 F. App'x 892, 896 (11th Cir. 2017). The OEA defines breach in Section 6.1(A)(ii) as

> the failure to observe or perform any of the covenants, conditions or *obligations* of this OEA, other than [the failure to make any payment required to be made hereunder within ten (10) days' after the due date], within thirty (30) days' after the issuance of a notice by another Party or Operator . . . specifying the nature of the default claimed.

[Doc. 1-3, p. 24 (emphasis added)]. The Court is not here to determine, on the motion

---

[4] To further illustrate the point, in its first complaint, NEIS sought "a declaration as to: (a) *which party*—Target or NEIS—*is responsible* under the terms of the OEA for restoration of the Slope and the retaining wall necessary to permit NEIS . . . to restore the Common Utility Lines affected by the failure of the Slope and retaining wall founded on it." *Target I*, No. 5:24-cv-126-TES (M.D. Ga. Apr. 25, 2024) (emphasis added), Dkt. No. 1-1.

before it, whether either party breached the OEA under Section 6.1(A)(ii). Instead, the Court's decision on this motion further develops Target's obligations under the OEA—one part of a breach under Section 6.1(A)(ii). Bottom line, the present motion is properly before the Court.

### E.    Target's Obligations Under the OEA

Target's Motion for Partial Summary Judgment seeks a declaration that, "as a matter of law, Target is not responsible for maintaining, repairing, or restoring any damaged or destroyed Common Area, including Common Utility Lines, outside of the Target Tract." [Doc. 19, p. 1]. "The construction of a contract is a question of law" that involves three steps: (1) if "the language is clear and unambiguous," courts "simply enforce[] the contract according to its clear terms"; (2) "if the contract is ambiguous in some respect, [courts] must apply the rules of contract construction to resolve the ambiguity"; and (3) "if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury." *City of Baldwin v. Woodard & Curran, Inc.*, 743 S.E.2d 381, 389 (Ga. 2013) (citation omitted); *see* O.C.G.A. § 13-2-1.

The meaning of "plain and unambiguous" terms of a contract is a question of law "and is 'particularly appropriate for summary judgment.'" *Sims v. Taylor*, 270 F. App'x 940, 944 (11th Cir. 2008) (quoting *Garvin v. Smith*, 510 S.E.2d 863, 864 (Ga. Ct. App. 1999)); O.C.G.A. §13-2-1. In its previous Order, the Court held that the OEA is

"clear and unambiguous." *Target I*, No. 5:24-cv-126-TES (M.D. Ga. Mar. 27, 2025) (internal citations omitted), Dkt. No. 70. Therefore, the Court must interpret the OEA according to its terms. *Baldwin*, 743 S.E.2d at 389. According to the OEA's terms, the Court finds that Target is not obligated under Sections 4.2(D), 4.2(F), or 4.2(G) to maintain, repair, or restore any damaged or destroyed Common Area, including Common Utility Lines, outside of the Target Tract. Here's why:

### Section 4.2(D)

Section 4.2(D) outlines the Common Area Maintenance ("CAM") contribution obligations of tract owners. [Doc. 1-2, pp. 42–43]. The parties argue over whether the distribution of CAM contributions in Section 4.2(D) limits Target's repair and restoration responsibilities beyond its own Tract. [Doc. 19-1, p. 4; Doc. 27, p. 4]. However, as the Court detailed in its previous Order, there is a difference between "maintenance" and "repair." *Target I*, No. 5:24-cv-126-TES (M.D. Ga. Mar. 27, 2025), Dkt. No. 70. Section 4.2(D) merely requires Target to pay NEIS a percentage of maintenance costs in proportion to its Tract within the larger Shopping Center. [Doc. 1-2, pp., 42–43]. The language of Section 4.2(D) does not speak to any obligation for repair, restoration, or the costs thereof on any tract.

### Section 4.2(F)

The Court outlined the obligations of Section 4.2(F) in its previous order. This section requires Target to repair or restore the Common Area *on its tract* when the

11

Common Area is damaged or destroyed by means other than ordinary use or wear and tear.[5] [Doc. 1-2, p. 44]; *see also Target I*, No. 5:24-cv-126-TES (M.D. Ga. Mar. 27, 2025), Dkt. No. 70. "On its tract" explicitly limits Target's repair and restoration obligations under this section to the Target Tract. [Doc. 1-2, p. 44]. To be clear, the Court is not stating—as NEIS seems to think Target is arguing, *see* [Doc. 27, pp. 1–2]—that NEIS could not indemnify Target under Section 4.2(F) should the requirements therein be met. Instead, the Court is merely saying that Section 4.2(F) does not place any affirmative obligation on Target to repair or restore damaged or destroyed Common Area outside of the Target Tract.

Section 4.2(G)

Target asserts that its "obligation to repair or restore any Common Area is governed by Section 4.2(G)." [Doc. 19-1, p. 3]. Like in Section 4.2(D), Target is conflating maintenance and repair. However, Target's Motion asks the Court to declare its responsibilities for "maintaining, repairing, or restoring" the Common Area, so an analysis of 4.2(G) is still necessary. [Doc. 19, p. 1]. Like Section 4.2(F), Section 4.2(G) obligates Target to maintain the Common Area on its tract, but the plain language of Section 4.2(G) does not obligate Target to maintain the Common Area anywhere beyond its tract. [Doc. 1-3, p. 1]. The same is true for Common Utility Lines. Section

---

[5] The Court notes that the OEA does not define "ordinary use" or "wear and tear." Furthermore, the Court has not defined those terms, and is not here to do so at this time. That is likely a question for the factfinder.

4.2(G) clearly obligates NEIS to maintain Common Utility Lines, including retention ponds, *regardless of location*, but places no such obligation on Target. [Doc. 1-3, p. 1]. NEIS attempts to argue that Target is "extrapolati[ng]" 4.2(G) unfairly, stating that the opt-in requirement of Section 4.2(G) means that Target's arguments would be nonsensical had it not opted into Section 4.2(G). [Doc. 27, p. 4]. The reality, though, is that Target *did* opt into Section 4.2(G). Section 4.2(G) controls the parties' obligations and does not place maintenance requirements on Target beyond its own Tract. The language of Section 4.2(G) does not speak to any repair or restoration obligations.

The Court, therefore, **GRANTS** Defendant's Partial Motion for Summary Judgment [Doc. 19], and **DECLARES** that Target does not have any obligations under Sections 4.2(D), (F), and (G) to maintain, repair, or restore any damaged or destroyed Common Area, including Common Utility Lines, beyond the Target Tract.

**SO ORDERED**, this 10th day of October, 2025.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**